IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TYWAN WILLIAMS, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL ACTION NO. |
| | :: | NO. 1:07-CR-00239-WSD-GGB |
| | :: | |
| UNITED STATES OF AMERICA, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:14-CV-1283-WSD-GGB |

**FINAL REPORT AND RECOMMENDATION**

Tywan Williams is a federal prisoner who, *pro se*, challenges his judgment

of conviction under 28 U.S.C. § 2255.  (Docs. 181, 182, 186).[1]  The government

filed a brief opposing the motion, (Doc. 191), and Williams filed a reply, (Doc.

195).  For the reasons discussed below, I recommend that the motion be denied.

**I.     Background**

Williams was charged with three counts of violating 18 U.S.C. § 111(a)(1)

and (b).  Each count of the indictment alleged that Williams, through the use of his

vehicle, forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered

with individual law enforcement officers while they were attempting to arrest him

on January 12, 2007.  (Doc. 4).

---

[1] All citations to the record are to No. 1:07-CR-00239-WSD-GGB.

On March 17, 2008, Williams pleaded guilty to Count One of the Indictment pursuant to a negotiated plea agreement.  (Doc. 30-1).  However, at a May 20, 2008 hearing scheduled for sentencing, Williams expressed regrets about his guilty plea and indicated a desire to withdraw it.  The sentencing hearing was adjourned to allow Williams additional time to decide whether he would seek to withdraw his guilty plea.  (Doc. 32).

On June 11, 2008, Williams orally moved to withdraw his guilty plea.  The Honorable Beverly B. Martin told  Williams that she thought that it was against his best interests and a "tragic, tragic, mistake" to withdraw his guilty plea.  She predicted that the consequences were "going to be profound."  *See* (Doc. 111 at 2). Williams's attorney stated in open court that the government had taken the position that there would be no other plea offers, and Williams stated that he understood. (*Id.*).  Nevertheless, Williams indicated that he wanted to go to trial, and Judge Martin allowed him to withdraw his guilty plea.  (*Id.* at 2-4).

On November 19, 2008, after a three-day trial, a jury found Williams guilty on Counts One and Three of the Indictment.  (Doc. 72).  At the sentencing on December 2, 2008, over the government's objections, the Court gave Williams a two point reduction for acceptance of responsibility, and declined to give him a

two-point enhancement for obstruction of justice for giving false testimony at trial. (Doc. 94 at 8-11). The Court sentenced Williams to 120 months in prison. (*Id.* at 21.).

The government appealed the sentence arguing that the Court erred when it reduced Williams's sentence for acceptance of responsibility and declined to enhance his sentence for obstruction of justice. The government argued that because Williams withdrew his guilty plea and falsely testified to his innocence at trial, he should not have been allowed a reduction for acceptance of responsibility and should have received an enhancement for obstruction of justice.[2] (Doc. 154 at 3).

The Court of Appeals set forth the facts established at trial as follows:

> Williams was a fugitive and tried to elude federal marshals when they attempted to arrest him. In 2005, after a North Carolina court issued a warrant for his arrest, Williams agreed to surrender, but never did so. Officers made several unsuccessful attempts to arrest Williams, and later transferred the matter to the United States Marshals Service. Armed with information that Williams had traveled repeatedly to Atlanta, Georgia, and with a second arrest warrant issued by a Georgia court, federal marshals searched for Williams.

---

[2] A defendant is subject to enhancement of his sentence if he willfully obstructs the administration of justice with respect to the investigation, prosecution, or sentencing of his offense of conviction. U.S.S.G. § 3C1 .1. The enhancement is applicable if a defendant commits perjury. *Id.* § 3C1.1 cmt. n.4(b).

3

In January 2007, Anthony Simpson, a deputy United States Marshal, and two deputies of the Cobb County Sheriff's Department observed a Cadillac Escalade vehicle in the parking lot of an apartment complex in Atlanta. The vehicle, which was painted a maroon color, matched the description of Williams's vehicle. The officers attempted to follow the vehicle, but were separated from the vehicle in traffic.

The next day, Simpson and other federal marshals returned to the apartment complex to search for Williams's vehicle. The marshals were clad in bulletproof vests that stated they were members of the Southeast Regional Fugitive Task Force, and the marshals were driving unmarked vehicles that were equipped with blue lights in the front and rear windshields, front and rear strobe lights, and sirens. After receiving a report that Williams was at a local British Petroleum gas station, the marshals drove to the station.

Deputy Marshal Wayne Warren and other federal marshals parked their vehicles in a line in the parking lot of the gas station. Williams saw the marshals and ran to his Escalade vehicle. Warren activated the emergency lights in his Dodge Durango vehicle and parked parallel to Williams to block his escape. Williams drove his Escalade vehicle in reverse and, as Warren tried to prevent an escape, Williams rammed the rear of Warren's Durango vehicle repeatedly. Warren stopped his vehicle momentarily and watched Williams strike the front end of Deputy Marshal Nana Joyner's Ford F-150 truck and Deputy Marshal Brad Bennett's unmarked Ford Expedition vehicle as it entered the parking lot with its lights and sirens activated. Warren repositioned his Durango vehicle to block the exit, but Williams struck the vehicle a second time and drove out of the parking lot into oncoming rush-hour traffic.

Several federal marshals, including Warren and Simpson, pursued Williams with their sirens and emergency lights activated. The marshals followed Williams's speeding vehicle on a ramp that

4

led to Interstate 285. To compensate for his speed, Williams made a wide turn onto the ramp that allowed Warren to maneuver beside Williams. Williams rammed Warren's Durango vehicle, and Warren struggled to keep his vehicle on the ramp and away from the edge of an embankment that was 75 feet off the ground. After Warren regained control of his vehicle, Williams forced Warren's speeding vehicle to scrape against the barrier wall long enough to produce sparks.

Warren fired two rounds of ammunition from his gun at Williams, and a bullet struck Williams in the eye. Williams lost control of his vehicle, but Warren pinned the vehicle against a retaining wall. Federal marshals broke the windows of Williams's vehicle, deflated its airbags, and removed Williams from the vehicle.

Williams testified that he did not realize his pursuers were federal marshals until they broke the windows of his vehicle. Williams said he thought the marshals were carjackers because he had noticed a sport utility vehicle with tinted windows following him and the other vehicles had been unmarked and lacked emergency lights. Williams stated that a vehicle hit his Escalade vehicle while he was backing out of his parking space at the gas station, which caused the side airbags in his vehicle to deploy and limited his vision. Williams testified that several vehicles struck his Escalade vehicle, but he alleged that he did not see emergency lights on the vehicles or hear any emergency sirens. When Williams tried to drive out of the parking lot, he swerved to avoid colliding with a black sport utility vehicle, which forced him into oncoming traffic. Williams asserted that he had been shot before he reached the ramp and had lost control of his vehicle, and he denied trying to force Warren off the ramp.

Williams admitted there was an outstanding warrant for his arrest, but he testified that he did not believe officers were looking actively for him. Williams testified that a year earlier a police officer agreed not to "pressure" Williams and to allow him to "get [his]

5

things together before [he] surrender[ed][.]" When asked why he was in possession of another man's driver's license and driving someone else's vehicle, Williams responded that the man was a "family member" for whom he had "probably" been "keeping [the license] safe" and his girlfriend had allowed him to drive her rental vehicle.

*United States v. Williams*, 627 F.3d 839, 841-42 (11th Cir. 2010).

The Court of Appeals agreed with the government on both sentencing issues and remanded his case for re-sentencing.  The Court of Appeals denied Williams's cross-appeal with respect to a jury instruction to which his counsel had not objected at trial.  *Id.* at 845.

On April 16, 2012, Williams was re-sentenced by a different district judge. As instructed by the Court of Appeals, the Court denied credit for acceptance of responsibility and enhanced the sentencing guideline calculation for obstruction of justice, sentencing Williams to 210 months in custody on Counts One and Three to run concurrently.  (Doc. 166).

Williams appealed again, arguing that his sentence was "procedurally and substantively unreasonable because the district court (1) engaged in a cursory discussion of the factors listed in 18 U.S.C. § 3553(a), and (2) failed to consider or address his post-offense rehabilitation." *United States v. Williams*, 511 F. App'x

836, 837 (11th Cir. 2013). The Court of Appeals found no reversible error and affirmed the sentence.  *Id.*

Williams timely filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, claiming ineffective assistance of counsel.  Specifically, Williams alleged that his trial and appellate counsel provided ineffective assistance by:  (1) affirmatively misadvising Williams to withdraw his guilty plea, knowing that Williams "would face a[n] obstruction of justice[] and perjury enhancement 3C1.1 should [he] take the stand and tell the truth"; (2) failing to object to the mislabeling of Government Exhibits 10N, 10Q, 10L, 10J, 10O, 10P and 10I; (3) failing to seek "removal of incorrect and irrelevant Government Exhibits 10I, 10J, 10K, 10L, 10M, 10N from evidence prior to deliberation"; (4) "refusing to appeal the preserved issue of repeated prejudicial Government testimony"; (5) not moving for federal funding to pay for an accident reconstruction expert witness; (6) "not appealing effect of cumulative error and for not objecting and moving for mistrial due to the accumulation of errors"; and (7) "misleading and misadvising the jury during closing argument that there isn't any photos of [the] burgundy Escalade to prove Government witness testimony is false."  (Doc. 182 at *passim*).  Williams later supplemented his motion to vacate

7

with a claim that his appellate counsel provided ineffective assistance by

(8) "failing and refusing to appeal the cumulative errors committed by the district court by participation in plea discussion that deprived defendant [of] a fair trial." (Doc. 186 at 2).

Additional facts are discussed in context below.

## II.    Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant.

8

*Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).  As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc).  To establish deficient performance, a movant must establish that no competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken.  *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, *i.e.*, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one."  *Id.* at 697.

9

### III.    Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Fontaine v. United States*, 411 U.S. 213, 215 (1973). The record in this case conclusively demonstrates that Williams is not entitled to relief under § 2255.

### A.    Williams's trial counsel did not provide ineffective assistance in connection with Williams's withdrawal of his guilty plea

Williams argues that his trial attorney was ineffective in advising him to withdraw his guilty plea. Williams contends that his attorney did not advise him that if he went to trial and testified on his own behalf that his sentence would be enhanced for obstruction of justice.  As an initial matter, it is clear from the record and Williams's assertions in his petition, that it was Williams's decision, not his attorney's decision, for Williams to withdraw his guilty plea.  In fact, in a confusing contradiction of his claim, Williams states in his petition that his counsel tried to convince him to plead guilty.  *See* (Doc. 182 at 3) ("My attorney Dwight L. Thomas interjected to agree with the court to convince me to plead guilty . . . .

Because advice of counsel I plead guilty . . . .").[3]  Williams states that he decided to withdraw his guilty plea when he learned at the May 20, 2008 hearing that he would be sentenced as a career offender.  (*Id.*).[4]

Significantly, at the time of the withdrawal of his plea and at trial, Williams contended that he was innocent of the charges against him.  *See* n.3 above. Williams still contends in his § 2255 petition that he was innocent.  *Id.*  Williams argues that if his counsel had told him that if he testified at trial and was found guilty he would receive an enhancement for obstruction of justice, he would have not withdrawn his guilty plea.

_____

[3]  At the time of his plea hearing,  Petitioner admitted that he "realized that it was law enforcement" chasing him, thus acknowledging his guilt.  (Doc. 115 at 22).  However, he denied that key element of his offense at trial, (Doc. 119 at 140-46), and he still denies it, (Doc. 182 at 3).

[4]  The pre-sentence report, which Williams and his attorney saw and signed on March 17, 2008, concluded that Williams was a career offender pursuant to U.S.S.G. § 4B1.1 because he had been convicted of at least two prior felonies involving crimes of violence or drug trafficking offenses and the instant offense involved violence.  Williams's status as a career offender increased his offense level to 32.  PSR ¶ 48.

Williams contends that his attorney initially advised him that his guideline range would be 27-33 months.  (Doc. 182 at 4).  Accepting this fact as true, it is nevertheless irrelevant, because Williams admits that he learned that he would receive a ten-year sentence due to his career offender status, and this information caused him to withdraw his plea and exercise his right to a trial.  (*Id.*).

11

The district judge  advised Williams that she would not allow him to plead guilty if he was not guilty.  (Doc. 115 at 21-22).  Counsel could not have ethically advised Williams to lie to the Court by telling the Court that he was guilty while he maintained his innocence.  *See* GA Bar R. 3.3.  In light of Williams's position that he was innocent of the charges, counsel would not have been ineffective even if he had advised Williams to withdraw his guilty plea and go to trial.  *See Osley v. United States*, 751 F.3d 1214, 1224 (11th Cir. 2014) (Section 2255 petitioner's claim that he would have pled guilty if he had been properly informed of mandatory minimum sentence were undermined by his repeated claims of innocence); *Bowden v. United States.*, No. 1:12-CV-3853-WSD, 2014 WL 2957254 (N.D. Ga. June 30, 2014) ("Bowden's repeated claims of innocence further undercut his claim that he would have pled guilty but for [his attorney's] ineffectiveness.").

Williams may have intended to argue that once he made the decision to go to trial, his attorney was ineffective for not advising him that he could get an enhancement for obstruction of justice if he committed perjury.  Williams, however, took an oath before his testimony that he would testify truthfully.  (Doc. 119 at 134).  An attorney's failure to mention the possibility of an obstruction

12

enhancement to his testifying client does not constitute ineffective assistance.  *See e.g., Bowden*, at *16 (rejecting argument that counsel was ineffective for failure to discuss possibility that defendant would receive an obstruction of justice enhancement for his testimony at trial); *Montas v. United States*, 2012 WL 5193413 *5 (M. D. Fla. 2012) (collecting cases).

At the time of the guilty plea, Williams's counsel stated in open court that the plea agreement offered benefits that Williams would not get if he was found guilty, and that Williams would be subjected to more years in prison if he were found guilty at trial.  (Doc. 115 at 22). During the hearing at which Williams expressed his desire to withdraw his plea, the Court advised Williams in very strong terms that the Court believed that withdrawal of his plea was against his best interest and a tragic mistake.  (Doc. 111).  Nevertheless, Williams decided to take his chances and try to convince the jury that he was innocent.  Williams gambled on a not guilty verdict and lost.  Although Williams obviously now regrets his choice, there is nothing to indicate that counsel rendered ineffective assistance with regard to Williams's decision.

13

**B.      Williams's attorneys did not provide ineffective assistance in failing to object at trial or raise on appeal some discrepancies between some vehicle descriptions on the exhibit list and the vehicles depicted in the photographic exhibits**

At the trial, photographs of vehicles involved in the offense were entered into evidence, without objection,  as Government Exhibits 10I - 10Q.  (Doc. 118 at 66); *see also* (Doc. 182-2.)  Williams points out, and the government concedes, that there were some discrepancies in that the Exhibit List does not accurately describe some of the vehicles depicted in the photographic exhibits.  According to Williams, these discrepancies are as follows:

- Exhibit 10N is described on the list as a green Ford F-150, but appears to be a white Ford Expedition
- Exhibit 10Q is described on the list as a burgundy Cadillac Escalade but appears to be a white Ford Expedition.
- Exhibit 10L us described on the list as a white Ford Expedition, but appears to be a green Ford
- Exhibit 10J is described on the list as a white Ford Expedition, but appears to be a white Dodge Durango
- Exhibit 10P is described on the list as a white Dodge Durango, but appears to be a white Ford
- Exhibit 10I is described on the list as a white Ford Expedition, but appears to be the front end of a white Dodge Durango and a partial front end of a Burgundy Cadillac Escalade.

(Doc. 182 at 5-6.)

14

The Court instructed the jury that they must consider only the evidence admitted in the case and that the evidence included the testimony of the witnesses and the exhibits admitted into the record.  (Doc. 120 at 47).  The Exhibit List – in contrast to the Exhibits themselves – was not evidence, and there is no reason to believe that the jurors ever saw it.  The witnesses testified about the Exhibits as they were looking at them and described what the photographs actually depicted. For example, Deputy Marshal Anthony Simpson accurately described Exhibit 10I as depicting a white Durango and burgundy Escalade.  (Doc. 118 at 69).  Deputy Simpson also accurately described Exhibit 10L as depicting a Ford F-150.  (*Id.* at 70).  For these reasons, any discrepancies in the description of the Exhibits on the Exhibit List did not affect the jurors' consideration of the evidence, and there was no reason for counsel to raise those discrepancies at trial or on appeal.

### C.    Counsel was not ineffective for failing to seek removal of alleged irrelevant exhibits prior to jury deliberations

In Ground Three, Williams appears to be arguing that counsel was ineffective for failing to seek to have the Exhibits relating to Count Two of the Indictment struck after the Court dismissed that Count, but before the jury retired to deliberate on the remaining Counts.  Count Two charged that  Williams

15

assaulted Deputy Marshal Joyner by striking Joyner's Ford F-150 truck. The evidence at trial was undisputed that Deputy Joyner was part of the team of officers trying to arrest Williams, and that Williams's vehicle struck Deputy Joyner's truck during the series of events that led to Williams's indictment and conviction. (Doc. 118 at 53); *see also Williams*, 627 F. 3d at 841. In dismissing Count Two, the Court ruled that there was no evidence that Williams intentionally directed his vehicle towards Deputy Joyner. (Doc. 118 at 53; Doc. 119 at 133). Williams argues that any photographs depicting the Ford F-150 driven by Deputy Joyner should therefore have been removed from evidence because the Count relating to Deputy Joyner was dismissed.

Despite the fact that there was insufficient evidence to prove that Williams intentionally directed his vehicle towards Deputy Joyner, the evidence that Williams struck Deputy Joyner's vehicle was clearly relevant to show the totality of circumstances surrounding the offenses charged in Counts One and Three. Indeed, the Court of Appeals referred to the striking of Deputy Joyner's truck when it summarized the relevant facts of the case. *Williams*, 627 F. 3d 839 at 841. Moreover, Williams did not deny that he struck Deputy Joyner's vehicle.

16

Therefore, the admission of the evidence was not unfairly prejudicial and counsel was not ineffective for failing to exclude it from the jury's consideration.

### D.   Appellate Counsel was not ineffective for failing to appeal "prejudicial" government testimony

In Ground Four, Williams argues that his appellate counsel rendered ineffective assistance in failing to appeal the introduction of certain testimony to which an objection had been made by trial counsel.  Specifically, Williams points to the testimony of Deputy Marshal Wayne Warren III.  Deputy Warren testified that he and other officers reviewed Williams's "criminal history" before attempting to execute the warrant for his arrest.  (Doc. 119 at 70).   Williams's attorney objected to the reference to "criminal history" and moved for a mistrial because the testimony suggested that Williams had prior convictions.  Williams did have prior convictions, but the Court had earlier ruled that the officers could not testify to those prior convictions.  (*Id*. at 73).  The Court denied the motion for mistrial, but gave a curative instruction to the jury.  (*Id*. at 73-74).

Later in the trial, Williams's counsel explained to the Court that he had discussed with Williams that some of his criminal history might be elicited on cross examination if Williams chose to testify.  (*Id*. at 114).  The Court addressed

17

Williams directly and told him that if he testified, he would be subject to cross-examination about his criminal history, but if he did not testify, the jury could not consider his criminal history.  In response to the Court's question as to whether he decided to testify, Williams responded that he was going to testify.  (*Id.*).  Thereafter, the Court had an extensive discussion with the parties about which prior convictions could be brought up in cross examination. (*Id.* at 120-127).  Williams's counsel and the government elicited from Williams that he had several prior convictions. (*Id.* at 135, 154).

Once Williams testified, the government properly  brought out evidence of his criminal convictions for impeachment purposes.  *See* Fed. R. Evid. 609.  Because there was no error in the jury learning that Williams had a criminal history, appellate counsel was not ineffective for failure to raise on appeal that Deputy Warren had testified that Williams had a "criminal history".

Williams also claims that appellate counsel should have raised on appeal, issues about other portions of Deputy Warren's testimony.  Specifically, the government elicited from Deputy Warren his beliefs about Williams's intentions including his belief that Williams would have killed Deputy Warren if he needed to do so to escape.  (Doc. 119 at 96).  Williams's counsel objected.  The Court

18

sustained the objection and instructed the jury that it should disregard Deputy

Warren's testimony about what Williams thought. (*Id.* at 97).

A neglected claim on appeal satisfies the test for ineffective assistance only

if that claim would have had "a reasonable probability of success on appeal".

*Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991).  Here, the issue of Deputy

Warren's testimony would not have had a reasonable probability of success on

appeal because any error was cured by the court's instructions.  *See Richardson v.

Marsh*, 481 U.S. 200, 211 (1987)  (juries are presumed to follow the court's

instructions).  Therefore, appellate counsel was not ineffective for failing to raise

this issue.

### E.   Trial counsel was not ineffective in failing to move for federal funding to pay for an accident reconstruction expert witness

In his Fifth Ground, Williams alleges that his trial counsel was ineffective in

not obtaining an accident reconstruction expert witness.  Williams alleges that his

trial counsel should have moved for the government to pay for the expert witness.

However, the record reveals that counsel did obtain a report from an expert

engineer stating that the damage to Williams's vehicle, the Escalade, was

inconsistent with reports that it was used as a battering ram to damage other cars.

19

(Doc. 18; Doc. 48 at 6).  The expert states that the photographs show that there was

damage to the Escalade in the left front and left side, but that there was no damage

to the front or the right rear, and that any damage to the other areas of the vehicle

were unknown due to the lack of photographs.  He also states:

> There should have been more photographs taken of the Cadillac
> especially since it was supposed to have caused most of the impact
> damage. Yet there are no photographs of the rear or right side of the
> Cadillac. Could it be possible that the Police photographer was told to
> take photographs only of the damaged areas? If this is the case, then
> the damage to the Cadillac is not at all consistent with the description
> given in the statements.

(Doc. 18 at 9).  The Court scheduled a *Daubert* hearing to evaluate the

admissibility of the testimony from Williams's expert.  (Doc. 57).  However,

Williams's trial counsel later informed the court that a *Daubert* hearing would not

be necessary.  (Doc. 60).

At trial, Williams did not dispute that events occurred generally as described

by the officers.  Rather, he defended on the basis that he did not know that the

people pursuing him were law enforcement officers, and that he fled to avoid what

he believed to be an assault by unknown assailants. There was no dispute that

Williams's vehicle damaged the officers' vehicles.  The degree of damage was not

particularly relevant.  Therefore, an accident reconstruction expert witness would

20

have added little, if anything, to buttress Williams's defense.  At best, Williams has shown that his counsel made a strategic decision not to call an expert witness to dispute the government's version of the events that took place.  And "[c]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Chandler*, 218 F.3d at 1314 (quoting *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)).

### F.     Appellate counsel was not ineffective for not appealing the effects of cumulative errors

In Ground Six, Williams argues that his appellate counsel provided ineffective assistance "for not appealing effect of cumulative error and for not objecting and moving for mistrial due to the accum[u]lation of errors."  (Doc. 182 at 12).  As discussed above and below, there were no cumulative errors at trial to appeal.  Therefore, this claim is without merit.

### G.     Trial counsel was not ineffective for failing to argue that Williams's vehicle was undamaged

In Ground Seven, Williams argues that his trial counsel provided ineffective assistance of counsel "for misleading and misadvising the jury during closing argument that there isn't any photos of my burgundy Escalade to prove Government witness testimony is false."  (Doc. 182 at 13).

Williams's argument is difficult to discern.   It appears that he is arguing that his trial counsel should have argued to the jury that none of the photographs of Williams's Escalade showed damage to the Escalade that corroborated or was consistent with the officers' testimony that Williams used his vehicle in a head-on collision with any of the officers' vehicles.  (Doc. 182 at 13-14).

However, counsel did argue to the jury about the lack of evidence of damage to Williams's vehicle in an effort to suggest a cover-up.  Williams's counsel stated in his closing:

> Another question, here is a vehicle that is alleged to be part of an incident. Where are all the photographs?  Where are all the documents?  Why didn't they photograph everything?  Why didn't they want to photograph it?  Because they didn't know whether this young man . . . they didn't keep any of it, because they got rid of all his stuff, they got rid of all this.  They didn't know whether this young man was going to fight them or not.  And we don't need to take pictures of this whole vehicle, because if we take pictures of this whole vehicle, somebody, maybe a reconstruction expert, some mechanic, somebody may be able to come in here and point that out, and, wow, the cover is off the cover-up, and so they didn't do that. Cars have been totaled, all of them. The government made sure none of that was available.

(Doc. 120 at 29).  Counsel's decision to not make any different or additional argument on this point was clearly a strategic decision that does not rise to the

22

level of ineffective assistance.  See *Chandler*, 218 F.3d at 1314 ("[c]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy'") (quoting *Darden v. Wainwright*, 477 U.S. at 186).

**H.**     **The Court did not deprive Williams of a fair trial by advising him that his decision to withdraw his guilty plea was a "tragic, tragic mistake"**

In Ground Eight, Williams asserts that his appellate counsel provided ineffective assistance by "failing and refusing to appeal the cumulative errors committed by the district court by participation in plea discussion that deprived defendant [of] a fair trial."  (Doc. 186 at 2).  This argument is meritless for several reasons.

While it is true that Federal Rule of Criminal Procedure 11(c)(1) prohibits judicial participation in plea discussions between the government and a defendant, the United States Supreme Court "overruled [the Eleventh Circuit's] precedent that judicial participation in plea discussions require[s] automatic vacatur without regard to case specific circumstances."  *United States v. Castro*, 736 F.3d 1308, 1315 (Martin, J., concurring) (citing *United States v. Davila*, 133 S. Ct. 2139 (2013)).  And, where a defendant does not make a contemporaneous objection to

judicial participation in plea discussions, review on appeal is solely for plain error. *Davila*, 133 S. Ct. at 2147; *Castro*, 736 F.3d at 1313.

Because Williams did not object to Judge Martin's comments during the course of the hearing in which she made them, this claim – if it had been made on appeal – would have been subject to plain error review, and Williams has not supported it with allegations that plausibly suggest that there is any reasonable probability that he would have prevailed in showing plain error on appeal. Moreover, as should be immediately apparent, this is not a case in which a district judge "coerced" a defendant into pleading guilty where he would have preferred to stand trial. In fact, Williams withdrew his guilty plea, and he exercised his right to go to trial. Finally, Williams has raised no substantial claim that Judge Martin conducted his trial unfairly because he did not plead guilty.

As previously discussed, appellate counsel's failure to raise an issue on appeal constitutes ineffective assistance only if that claim would have had "a reasonable probability of success on appeal." *Heath v. Jones*, 941 F.2d at 1132 (11th Cir. 1991). Williams has not alleged facts that demonstrate a "reasonable probability" that he would have prevailed under the plain error standard of review

24

on his Rule 11(c)(1) claim on appeal.  Thus, Williams is not entitled to relief on this ground.

## IV.   Certificate Of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

Williams has not made that showing.  Thus, he is not entitled to a certificate of appealability.

25

**V.     Conclusion**

For the foregoing reasons, I **RECOMMEND** that Williams's § 2255 motion

[149] be **DENIED** and that civil action number 1:14-CV-1283-WSD-GGB be

**DISMISSED**.  I further **RECOMMEND** that a certificate of appealability be

**DENIED**.

The Clerk is **DIRECTED** to terminate the referral of this case to me.

**SO RECOMMENDED** this 28th day of September, 2015.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE