IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TYWAN L. WILLIAMS,

                Movant,

      v.

UNITED STATES OF AMERICA,

                Respondent.

                              1:14-cv-1283-WSD
                              1:07-cr-239-WSD

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Gerrilyn G. Brill's Final

Report and Recommendation [197] ("R&R"),[1] recommending that Movant

Tywan L. Williams' ("Williams") Motion to Vacate, Set Aside or Correct Sentence

Under 28 U.S.C. § 2255 [181], as amended [182], [186] (together, "§ 2255

Motion"), be denied, that civil action number 1:14-cv-1283-WSD be dismissed,

and that a certificate of appealability be denied.   Also before the Court are

Williams' Objections [201] to the R&R, his Motions for Extension of Time to File

---

[1]     Citations to the record, in this Order, refer to criminal action number 1:07-cr-239-WSD-GGB.

Objections [199], [200],[2] his motion to file a "second/successive motion" [205],

and his "Motion to Supplement 2255(a)" [210], [211] ("Motion to Supplement").

## I.   BACKGROUND[3]

In 2007, a grand jury, in the Northern District of Georgia, returned an

Indictment [4] charging Williams with three counts of "ramm[ing] his Cadillac

Escalade vehicle, a deadly and dangerous weapon, into a [vehicle] driven by a law

enforcement officer," in violation of 18 U.S.C. §§ 111(a)(1)-(b).  On

March 17, 2008, Williams pleaded guilty to Count 1 of the Indictment.  ([30.1]).

At a May 20, 2008, hearing scheduled for sentencing, Williams expressed regrets

about his guilty plea.  The sentencing hearing was adjourned to give Williams time

to decide whether to withdraw his guilty plea.  ([32]).

On June 11, 2008, Williams orally moved to withdraw his guilty plea.  The

district court judge told Williams his request was "against [his] best interest" and a

"tragic, tragic, mistake."  ([111] at 2).  She predicted the consequences of the

withdrawal would "be profound."  ([111] at 2).  Williams insisted that he wanted to

---

[2]     Williams' unopposed Motions for Extension of Time to File Objections are
granted *nunc pro tunc*.
[3]     The facts are taken from the R&R and the record.  The parties have not
objected to any specific facts in the R&R, and the Court finds no plain error in
them.  The Court thus adopts the facts set out in the R&R.  See Garvey v. Vaughn,
993 F.2d 776, 779 n.9 (11th Cir. 1993).

go to trial, and confirmed he understood the government would not engage in

further plea discussions.  ([111] at 2).  The district court judge granted Williams'

request to withdraw his guilty plea.  ([111] at 2-4).  In November 2008, Williams

was tried, by a jury, on the charges in the Indictment.

> The evidence presented at trial established that Williams was a
> fugitive and tried to elude federal marshals when they attempted to
> arrest him.  In 2005, after a North Carolina court issued a warrant for
> his arrest, Williams agreed to surrender, but never did so.  Officers
> made several unsuccessful attempts to arrest Williams, and later
> transferred the matter to the United States Marshals Service.  Armed
> with information that Williams had traveled repeatedly to Atlanta,
> Georgia, and with a second arrest warrant issued by a Georgia court,
> federal marshals searched for Williams.

> In January 2007, Anthony Simpson, a deputy United States
> Marshal, and two deputies of the Cobb County Sheriff's Department
> observed a Cadillac Escalade vehicle in the parking lot of an
> apartment complex in Atlanta.  The vehicle, which was painted a
> maroon color, matched the description of Williams's vehicle.  The
> officers attempted to follow the vehicle, but were separated from the
> vehicle in traffic.

> The next day, Simpson and other federal marshals returned to
> the apartment complex to search for Williams's vehicle.  The
> marshals were clad in bulletproof vests that stated they were members
> of the Southeast Regional Fugitive Task Force, and the marshals were
> driving unmarked vehicles that were equipped with blue lights in the
> front and rear windshields, front and rear strobe lights, and sirens.
> After receiving a report that Williams was at a local British Petroleum
> gas station, the marshals drove to the station.

> Deputy Marshal Wayne Warren and other federal marshals
> parked their vehicles in a line in the parking lot of the gas station.
> Williams saw the marshals and ran to his Escalade vehicle.  Warren

activated the emergency lights in his Dodge Durango vehicle and
parked parallel to Williams to block his escape.  Williams drove his
Escalade vehicle in reverse and, as Warren tried to prevent an escape,
Williams rammed the rear of Warren's Durango vehicle repeatedly.
Warren stopped his vehicle momentarily and watched Williams strike
the front end of Deputy Marshal Nana Joyner's Ford F-150 truck and
Deputy Marshal Brad Bennett's unmarked Ford Expedition vehicle as
it entered the parking lot with its lights and sirens activated.  Warren
repositioned his Durango vehicle to block the exit, but Williams
struck the vehicle a second time and drove out of the parking lot into
oncoming rush-hour traffic.

Several federal marshals, including Warren and Simpson,
pursued Williams with their sirens and emergency lights activated.
The marshals followed Williams's speeding vehicle on a ramp that led
to Interstate 285.  To compensate for his speed, Williams made a wide
turn onto the ramp that allowed Warren to maneuver beside Williams.
Williams rammed Warren's Durango vehicle, and Warren struggled to
keep his vehicle on the ramp and away from the edge of an
embankment that was 75 feet off the ground.  After Warren regained
control of his vehicle, Williams forced Warren's speeding vehicle to
scrape against the barrier wall long enough to produce sparks.

Warren fired two rounds of ammunition from his gun at
Williams, and a bullet struck Williams in the eye.  Williams lost
control of his vehicle, but Warren pinned the vehicle against a
retaining wall.  Federal marshals broke the windows of Williams's
vehicle, deflated its airbags, and removed Williams from the vehicle.

Williams testified that he did not realize his pursuers were
federal marshals until they broke the windows of his vehicle.
Williams said he thought the marshals were carjackers because he had
noticed a sport utility vehicle with tinted windows following him and
the other vehicles had been unmarked and lacked emergency lights.
Williams stated that a vehicle hit his Escalade vehicle while he was
backing out of his parking space at the gas station, which caused the
side airbags in his vehicle to deploy and limited his vision.  Williams
testified that several vehicles struck his Escalade vehicle, but he

4

alleged that he did not see emergency lights on the vehicles or hear any emergency sirens.  When Williams tried to drive out of the parking lot, he swerved to avoid colliding with a black sport utility vehicle, which forced him into oncoming traffic.  Williams asserted that he had been shot before he reached the ramp and had lost control of his vehicle, and he denied trying to force Warren off the ramp.

Williams admitted there was an outstanding warrant for his arrest, but he testified that he did not believe officers were looking actively for him.  Williams testified that a year earlier a police officer agreed not to "pressure" Williams and to allow him to "get [his] things together before [he] surrender[ed][.]"  When asked why he was in possession of another man's driver's license and driving someone else's vehicle, Williams responded that the man was a "family member" for whom he had "probably" been "keeping [the license] safe" and his girlfriend had allowed him to drive her rental vehicle.

United States v. Williams, 627 F.3d 839, 841–42 (11th Cir. 2010).

On November 18, 2008, at the conclusion of the government's case-in-chief, the trial court granted Williams' motion for a judgment of acquittal on Count 2 of the Indictment, finding that there was insufficient evidence to sustain a conviction. ([119] at 133).  The next day, the jury found Williams guilty on Counts 1 and 3 of the Indictment.  ([72]).  On December 2, 2008, the court sentenced Williams to 120 months in prison.  ([94] at 21).  The Court, over the government's objections, gave Williams a two-point reduction for acceptance of responsibility, and declined to give him a two-point enhancement for obstruction of justice for giving false testimony at trial.  ([94] at 8-11).

The government appealed Williams' sentence, arguing that the district court should have enhanced Williams' sentence for obstruction of justice on the grounds that he falsely testified, at trial, that (1) "he thought he was evading carjackers," (2) he did not intend to assault the officers, and (3) "he was innocent of wrongdoing and the marshals were to blame for the incident." Williams, 627 F.3d at 840, 845. The government also argued that the district court should not have reduced Williams' sentence for acceptance of responsibility, because Williams "withdrew his plea of guilty, declared at trial that he was factually innocent, and was found guilty by a jury." Id. at 840.

On December 8, 2010, the Court of Appeals for the Eleventh Circuit accepted the government's arguments, and remanded the case to the district court for resentencing. Id. at 845.[4] On April 16, 2012, the district court resentenced Williams to 210 months in prison. ([166]). On April 27, 2012, Williams filed his Notice of Appeal [167], challenging his sentence on the grounds that it "is procedurally and substantively unreasonable because the district court (1) engaged in a cursory discussion of the factors listed in 18 U.S.C. § 3553(a), and (2) failed to consider or address his post-offense rehabilitation." United States v. Williams,

---

[4]    The Court of Appeals denied Williams' "cross-appeals about a jury instruction that he did not challenge at trial." Williams, 627 F.3d at 841.

511 F. App'x 836, 837 (11th Cir. 2013).  On February 28, 2013, the Court of Appeals affirmed Williams' sentence.  Id.

On April 15, 2014, Williams filed his § 2255 Motion, which he amended on June 16, 2014.  Williams claims his trial and appellate counsel rendered ineffective assistance by (1) advising Williams to withdraw his guilty plea, knowing that Williams "would face a[n] obstruction of justice[] and perjury enhancement 3C1.1 should [he] take the stand and tell the truth"; (2) failing to object to the mislabeling of Government Exhibits 10N, 10Q, 10L, 10J, 10O, 10P and 10I; (3) failing to seek "removal of incorrect and irrelevant Government Exhibits 10I, 10J, 10K, 10L, 10M, 10N from evidence prior to deliberation"; (4) "refusing to appeal the preserved issue of repeated prejudicial Government testimony"; (5) failing to move for federal funding to pay for an accident reconstruction expert witness; (6) "not appealing effect of cumulative error and for not objecting and moving for mistrial due to the accumulation of errors"; (7) "misleading and misadvising the jury during closing argument that there isn't any photos of [the] burgundy Escalade to prove Government witness testimony is false"; and (8) "failing and refusing to appeal the cumulative errors committed by the district court by participation in plea discussion that deprived defendant [of] a fair trial."  ([182]; [186]).

On September 28, 2015, the Magistrate Judge issued her R&R,
recommending that Williams' § 2255 Motion be denied, that civil action number
1:14-cv-1283-WSD be dismissed, and that a certificate of appealability be denied.
On November 7, 2015, Williams filed his Objections to the R&R, generally
repeating the arguments he asserted in his § 2255 Motion.

## II.    DISCUSSION

### A.    Standard of Review

After conducting a careful and complete review of the findings and
recommendations, a district judge may accept, reject, or modify a magistrate
judge's report and recommendation.  28 U.S.C. § 636(b)(1);
Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S.
1112 (1983).  A district judge "shall make a *de novo* determination of those
portions of the report or specified proposed findings or recommendations to which
objection is made."  28 U.S.C. § 636(b)(1).  With respect to those findings and
recommendations to which objections have not been asserted, the Court must
conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093,
1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).  In view of Williams'
Objections, the Court conducts a *de novo* review of the record.

B.     Legal Standard for Strickland Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's conduct was "outside the wide range of professionally competent assistance" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 690, 694 (1984). Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[F]or a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

C.     Analysis

1.     Claim 1: Withdrawal of Guilty Plea

Williams argues his trial attorney was constitutionally ineffective "for affirmatively misadvising [Williams] to withdraw [his] [guilty] plea knowing [Williams] would face a[n] obstruction of justice[] and perjury enhancement 3c1.1 should [he] take the stand and tell the truth." ([182]). The record is clear, however, that Williams' attorney advised him to plead guilty. (See, e.g., [182] at 3 ("My attorney Dwight L. Thomas interjected to agree with the court to convince

9

me to plea guilty . . . .  Because advice of counsel I plead guilty."); Obj. at 2

(Williams' attorney "strongly urged an apprehensive defendant to take the plea

offer").  Williams' attorney also stated, in open court, that the plea agreement

offered Williams benefits he "would never get if he was found guilty" at trial,

including a lower sentence.  ([115] at 22).  It was Williams, not his attorney, who

decided to withdraw the guilty plea.  He did so because he insisted he was factually

innocent and because he learned, at the May 20, 2008, hearing, that would be

sentenced as a career offender under the United States Sentencing Guidelines.

([182] at 3-4); Obj. at 3).

    Even if Williams' counsel did advise him to withdraw his guilty plea, this

does not constitute ineffective assistance because Williams maintained—and still

maintains—he is factually innocent.  See Bowden v. United States, No. 1:12-cv-

3853, 2014 WL 2957254 (N.D. Ga. June 30, 2014) ("Bowden's repeated claims of

innocence further undercut his claim that he would have pled guilty but for

[his attorney's] ineffectiveness."); see also Osley v. United States, 751 F.3d 1214,

1224 (11th Cir. 2014) (Section 2255 petitioner's claim that he would have pled

guilty if he had been properly informed of mandatory minimum sentence were

undermined by his repeated claims of innocence).[5]  Williams, in his first claim,

fails to show he received constitutionally ineffective assistance of counsel.

> 2.    Claim 2:  Mislabeling of Government Exhibits

The trial court admitted into evidence, without objection, several

photographs of the vehicles involved in Williams' offense.  ([118] at 66; see also

[182.2]).  The photographs were admitted as Government Exhibits 10I through

10Q.  Williams claims the "Exhibit List" does not accurately describe some of the

vehicles in the photographs.  He identifies the following discrepancies:

(1)    Exhibit 10N is described on the list as a green Ford F-150, but appears to be a white Ford Expedition.

(2)    Exhibit 10Q is described on the list as a burgundy Cadillac Escalade, but appears to be a white Ford Expedition.

(3)    Exhibit 10L is described on the list as a white Ford Expedition, but appears to be a green Ford.

(4)    Exhibit 10J is described on the list as a white Ford Expedition, but appears to be a white Dodge Durango.

(5)    Exhibit 10O is described on the list as a Durango/Escalade, but appears to be a white Ford Explorer.

---

[5]    To the extent Williams argues his attorney was ineffective for failing to advise him that he could get a sentencing enhancement if he committed perjury at trial, his argument fails.  See Bowden, 2014 WL 2957254, at *16 (rejecting argument that counsel was ineffective for failure to discuss the possibility that defendant would receive an obstruction of justice enhancement for his testimony at trial); Montas v. United States, 2012 WL 5193413 *5 (M. D. Fla. 2012).

(6)     Exhibit 10P is described on the list as a white Dodge Durango, but appears to be a white Ford.

(7)     Exhibit 10I is described on the list as a white Ford Expedition, but appears to be the front end of a white Dodge Durango and a partial front end of a Burgundy Cadillac Escalade. (Doc. 182 at 5-6)

([182] at 5).  Williams argues his counsel was constitutionally ineffective for failing to raise these discrepancies at trial or on appeal.  The Court disagrees.

The trial court instructed the jury to "make [its] decision only on the basis of the testimony and other evidence presented . . . during the trial" and to "consider only the evidence [that the court] admitted in the case."  ([120] at 45, 47).  The court explained that "[t]he term 'evidence' includes the testimony of the witnesses and the exhibits admitted in the record."  ([120] at 47).  Under the trial court's instructions, the Exhibit List did not constitute evidence and the jury was not permitted to consider it.  Assuming, as the Court must, that the jury followed the trial court's instructions, the jury did not consider the Exhibit List in reaching its verdict.  See United States v. Lopez, 649 F.3d 1222, 1237 (11th Cir. 2011) ("We presume that juries follow the instructions given to them.").  There is no evidence the jury even saw the Exhibit List, and the witnesses who testified about the photographs accurately described their content.  (See, e.g., [118] at 69-70).  The Court agrees with the Magistrate Judge that "any discrepancies in the description

12

of the Exhibits on the Exhibit List did not affect the jurors' consideration of the evidence," and Williams' counsel was not constitutionally ineffective for failing to raise the discrepancies at trial or on appeal.  (R&R at 15).

3.     Claim 3:  Failure to Seek Removal of Count 2 Exhibits

Williams claims his counsel was constitutionally ineffective for failing, after Count 2 was dismissed, to "seek[] the removal" of certain exhibits (the "Exhibits") concerning Count 2.  ([182] at 7).  Count 2 charged Williams with "knowingly and willfully" assaulting Deputy Marshal Joyner ("Deputy Joyner") by "ramm[ing]" Williams' vehicle into Deputy Joyner's Ford F-150 truck.  ([4] at 2).  At the close of the government's case, the trial court dismissed Count 2 because there was insufficient evidence that Williams intentionally directed his vehicle toward Deputy Joyner.  ([119] at 133).  Although it was undisputed that Williams struck Deputy Joyner's vehicle, the evidence showed Deputy Joynar was not inside the vehicle at the time.  ([199] at 129-133).

Having conducted a *de novo* review, the Court agrees with the Magistrate Judge that "the [Exhibit] evidence that Williams struck Deputy Joyner's vehicle was clearly relevant to show the totality of circumstances surrounding the offenses charged in Counts One and Three."  (R&R at 197).  Williams's striking of Deputy Joyner's vehicle was "inextricably intertwined" with the events underlying

13

Counts 1 and 3.  See United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir.

2007) (stating that evidence is admissible if it is "(1) an uncharged offense which

arose out of the same transaction or series of transactions as the charged offense,

(2) necessary to complete the story of the crime, or (3) inextricably intertwined

with the evidence regarding the charged offense"); see id. ("[E]vidence is

inextricably intertwined with the evidence regarding the charged offense if it forms

an integral and natural part of the witness's accounts of the circumstances

surrounding the offenses for which the defendant was indicted.").  Indeed, the

Eleventh Circuit, in its summary of the case, described the incident in which

Williams struck Deputy Joyner's vehicle.  See Williams, 627 F.3d at 841

("Warren stopped his vehicle momentarily and watched Williams strike the front

end of Deputy Marshal Nana Joyner's Ford F-150 truck and Deputy Marshal Brad

Bennett's unmarked Ford Expedition vehicle as it entered the parking lot with its

lights and sirens activated.").  Williams' counsel was not constitutionally

ineffective for failing to seek the exclusion of the Exhibits.

4.    Claim 4:  Prejudicial Government Testimony

Williams claims his appellate counsel was constitutionally ineffective "for

failing and refusing to appeal the preserved issue of repeated prejudicial

government testimony."  ([182] at 8).  The "prejudicial government testimony,"

about which Williams complains, is (1) Deputy Warren's testimony of Williams'
intent, including Deputy Warren's belief that Williams would have killed him if he
needed to do so to escape, and (2) Deputy Warren's testimony that the officers
reviewed Williams' "criminal history" before attempting to arrest him.  ([182] at 8;
[119] at 70, 96).  The trial court instructed the jury to disregard this testimony,
stating that the testimony was irrelevant, that "the person on the stand can't testify
about what somebody else . . . thought," that Williams was "on trial only for the
crimes charged in this case," and that the jury was not permitted to convict
Williams on the grounds that he is "bad person" who "must be guilty of this crime
as well."  ([119] at 75, 180-181).

Williams' counsel was not constitutionally ineffective for failing, on appeal,
to challenge Deputy Warren's testimony.  The jury was instructed to disregard the
testimony and courts "presume that juries follow the instructions given to them."
Lopez, 649 F.3d at 1237.  Williams also chose to testify at his trial, even though he
was cautioned—by both counsel and the court—that this would allow the
government to cross-examine him on his criminal history.  ([119] at 114).  When
Williams took the stand, his counsel and the government elicited from him
testimony about his prior convictions.  ([119] at 135, 153-154).  Deputy Warren's
testimony about Williams' "criminal history" thus was not prejudicial, and

15

Williams' counsel's failure, on appeal, to raise Deputy Warren's testimony was not constitutionally deficient.

5.       Claim 5:  Accident Reconstruction Expert Witness

Williams claims his trial counsel was constitutionally ineffective "for not moving for federal funding to pay for [an] expert reconstruction witness . . . to reconstruct the scene of arrest by use of the vehicles used for the arrest."  ([182] at 9).  Williams did not, at trial, dispute the officers' general description of the incident described in the Indictment.  There was no dispute that Williams' vehicle damaged the officers' vehicles.  Williams' primary defense was that he did not know that the people pursuing him were law enforcement officers, and that he fled to avoid what he believed to be an assault by unknown assailants.

Having conducted a *de novo* review of the record, the Court agrees with the Magistrate Judge that "an accident reconstruction expert witness would have added little, if anything, to buttress Williams's defense."  (R&R at 20-21).  In view of the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 694 (1984), Williams' counsel was permitted to make a strategic decision to focus on Williams' knowledge and intent rather than the mechanics of the vehicle collisions.  See Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) ("Even if in

16

retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it.  The burden of proof to establish ineffectiveness and prejudice is on the petitioner.").  In view of the abundant evidence of Williams' guilt, even if trial counsel's decision was deficient—which it was not—Williams has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 690.  Williams has not met his "heavy burden" of showing his counsel was constitutionally ineffective for failing to obtain an accident reconstruction expert.  Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010).[6]

> 6.   Claim 6:  Cumulative Error

Williams claims his counsel was constitutionally ineffective "for not appealing the effect of cumulative error and for not objecting and moving for mistrial due to the accumulation of errors."  ([182] at 12).  Williams does not, in his § 2255 Motion, identify the specific errors whose cumulative effect should have been raised at trial or on appeal.  For the reasons explained in the Court's

---

[6]     The Court notes that Williams' counsel obtained an expert report from an engineer, who evaluated the damage to the vehicles involved in the incident.  ([18]; [48]).  Because of "time constraints" and untimely payment from Williams' family, the expert withdrew from the case before trial.  ([110] at 2).

denial of Williams' other claims, counsel's failure to raise the errors alleged in
Williams' § 2255 Motion— taken separately or together—does not establish
constitutionally ineffective assistance.  (See R&R ("[T]here were no cumulative
errors at trial to appeal.").

### 7.   Claim 7:  Williams' Closing Argument

Williams claims his trial counsel was constitutionally ineffective for
"misleading and misadvising the jury during closing argument that there isn't any
photos of [his] burgundy Escalade to prove Government witness testimony is
false."  ([182] at 13).  He states that counsel should have relied on a photograph
allegedly showing the front of Williams' vehicle was undamaged.  ([182] at 13-14;
[201] at 21).  Williams' claim lacks merit.

The "only" photograph allegedly showing Williams' undamaged vehicle
was admitted into evidence.  It was part of the record considered by the jury in
reaching its verdict, and Williams' counsel referenced the picture in his
cross-examination of a government witness.  ([119] at 25; [182] at 13-14; [182.2]
at 2).  The record also shows that Williams' counsel, in his closing argument, told
the jury that the lack of evidence of damage to Williams' vehicle suggested a
"cover-up:"

> Another question, here is a vehicle that is alleged to be part of an incident.  Where are all the photographs?  Where are all the documents?  Why didn't they photograph everything?  Why didn't they want to photograph it?  Because they didn't know whether this young man . . . they didn't keep any of it, because they got rid of all his stuff, they got rid of all this.  They didn't know whether this young man was going to fight them or not.  And we don't need to take pictures of this whole vehicle, because if we take pictures of this whole vehicle, somebody, maybe a reconstruction expert, some mechanic, somebody may be able to come in here and point that out, and, wow, the cover is off the cover-up, and so they didn't do that.  Cars have been totaled, all of them.  The government made sure none of that was available.

([120] at 29).

Counsel's decision to focus on the absence of photographic evidence was a reasonable strategy to undermine the government's testimony that Williams used his vehicle to strike the officers' vehicles in a head-on collision.  Williams has not shown that "no competent counsel would have taken the action that his counsel did take."  Chandler, 218 F.3d at 1315.  In view of the evidence presented at trial, Williams also has not shown that "but for" his counsel's strategic decision to focus—in his closing argument—on the absence of photographic evidence, Williams would not have been convicted.  Strickland, 466 U.S. at 690, 694.

8.    Claim 8:  The Trial Court's Participation in Plea Discussions

Williams claims his appellate counsel was ineffective "for failing and refusing to appeal the cumulative errors by the district court by participation in

19

plea discussion that deprived defendant a fair trial." ([186] at 2). Williams complains that the trial court judge told him "it would be a terrible idea" to withdraw his guilty plea, "we have pretty conservative juries," "I would be shocked if you weren't convicted," "when we come back and I have to sentence you to twice as much as what I was intending on sentencing you to today—I'm going to give you a fair trial, but I just don't understand how you think you're going to prevail," and made other similar statements. ([166] at 2-3; [111] at 4; [186]).

Because Williams' trial counsel did not object to these statements, they would have been subject to plain error review on appeal. See United States v. Davila, 133 S. Ct. 2139, 2147 (2013); United States v. Castro, 736 F.3d 1308, 1313 (11th Cir. 2013). "Plain error occurs when the district court commits an error that is plain, affects the defendant's substantial rights, and seriously affects the fairness, integrity or public reputation of judicial proceedings. Under this standard, the defendant who remains silent has the burden to show that his substantial rights were affected." Castro, 736 F.3d at 1313. Williams would have been required to show, on appeal, that the trial court's participation in his plea discussions "made a difference in his decision" regarding whether to plead guilty or go to trial. Id. at 1314.

20

In view of Williams' failure to object to the district court's statements, and Williams' decision to act contrary to—rather than consistent with—the court's advice, Williams has not shown a "reasonable probability" that he would have prevailed in showing plain error on appeal.  See Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991) (a defendant claiming ineffective assistance of appellate counsel must show that the "neglected claim would have a reasonable probability of success on appeal").  Williams' § 2255 Motion is required to be denied.[7]

---

[7]     On December 8, 2016, Williams sought to supplement his 2255 Motion, arguing that his "prior controlled substance offense does not qualify as career offender enhancement within the meaning of the [United States Sentencing] Guidelines." ([210]; [211]).  He asks that his "career offend [sic] enhancement be set aside." (Id.).  The Court declines to consider Williams' new claim because it was presented, for the first time, almost three years after he filed his 2255 Motion and more than a year after the Magistrate Judge issued her R&R.  See Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

Even if the Court considered the claim, Williams fails to present any meaningful factual or legal assertions entitling him to relief.  See In re Moore, 830 F.3d 1268, 1273 (11th Cir. 2016) ("[T]he district court cannot grant relief in a § 2255 proceeding unless the movant meets his burden of showing that he is entitled to relief.").  To be a "career offender" under the sentencing guidelines, a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. 4B1.1(a).  Williams appears to have several prior convictions that fit this description, including convictions for possession with intent to distribute cocaine and marijuana, the sale or delivery of cocaine, possession of cocaine and marijuana, possession with intent to manufacture, sell and deliver a controlled substance, and felony assault with a deadly weapon inflicting serious injury.  (See [207] at 5-13).  Williams fails to

9.      Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citations and quotation marks

---

identify which of his convictions do not qualify as predicate offenses under the sentencing guidelines, and he fails to explain why they do not qualify.  His two-sentence motion does not "carry his burden of showing all that is necessary to warrant § 2255 relief."  In re Moore, 830 F.3d at 1273.  The Motion to Supplement is denied.

omitted).  That Williams has failed to show he is entitled to relief is not reasonably

debatable.  A certificate of appealability is denied.[8]

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Gerrilyn G. Brill's Final

Report and Recommendation [197] is **ADOPTED**.

---

[8]      Williams' motion to file a "second/successive motion" is denied because
only the Court of Appeals may authorize a second or successive § 2255 motion.
See Farris v. United States, 333 F.3d 1211, 1216 (11th Cir. 2003).  Even
considering the claims asserted in Williams' motion, he fails to show he is entitled
to relief.  The one-page motion is titled, "Acceptance of instant letter/motion as
Johnson v. U.S., 135 S. Ct 2551 (2015) and Descamps v. U.S., 133 S. Ct. 2281
(2015) request for relief for prior conviction." ([205]).  Williams states he was
"sentenced to increased punishment in reliance of [sic] the now unconstitutional
language of the residual clause." ([205]).  He states further that "Descamps may
serve to disqualify the use of other prior convictions as well" and that he "will
submit [his] factual memorandum of law to the court when it is prepared and
completed." ([205]).  The Court has not received Williams' promised
memorandum.
        To the extent Williams relies on Johnson v. United States, 135 S. Ct. 2551
(2015) to challenge his sentencing enhancement under the United States
Sentencing Guidelines, his claim is foreclosed by Beckles v. United States, 137
S. Ct. 886 (2017) ("[T]he advisory Sentencing Guidelines, including § 4B1.2(a)'s
residual clause, are not subject to a challenge under the void-for-vagueness
doctrine.").  To the extent Williams cites Descamps v. United States, 133 S. Ct.
2276 (2013), without any explanation or elaboration of his claims, he does not
"carry his burden of showing all that is necessary to warrant § 2255 relief."  In re
Moore, 830 F.3d at 1273 ("[T]he district court cannot grant relief in a § 2255
proceeding unless the movant meets his burden of showing that he is entitled to
relief.").

**IT IS FURTHER ORDERED** that Movant's Objections [201] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Movant's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 [181], as amended [182], [186], is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's Motions for Extension of Time to File Objections [199], [200] are **GRANTED NUNC PRO TUNC**.

**IT IS FURTHER ORDERED** that Movant's motion to file a "second/successive motion" [205] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's "Motion to Supplement 2255(a)" [210], [211] is **DENIED**.

**IT IS FURTHER ORDERED** that civil action number 1:14-cv-1283-WSD is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this 3rd day of April, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

24